GARRISON, Judge.
On September 10, 1984, the plaintiff, Anthony Maranto, was admitted to Chalmette General Hospital for treatment for a severe case of herpes zoster, commonly known as shingles. Mr. Maranto, an eighty-six year old man at the time, was prescribed certain medication to relieve the discomfort caused by his condition. The possible side effects of plaintiffs medication included dizziness, hallucinations, disorientation and loss of balance.
An order issued by the plaintiff’s physician, Dr. Louis Cabiran, specified that plaintiff could only be ambulatory with assistance during his stay at the hospital. Furthermore, Dr. Cabiran recommended to plaintiff’s family that an all-night sitter be employed by them so that the plaintiff could get closer observation but the family did not follow this recommendation.
In the early morning hours of September 20, 1984, plaintiff attempted to get out of bed without assistance, fell down, and fractured his hip. Plaintiff alleged that this accident resulted from defendant Chal-mette General Hospital’s negligence. Pursuant to LSA-R.S. 40:1299:47, plaintiff’s claim was reviewed by a medical review panel which determined that the evidence did not support the conclusion that Chal-mette General Hospital failed to meet the applicable standard of care as charged by the plaintiff.
Subsequently, plaintiff filed this lawsuit against the defendant for damages alleging that his injuries were attributable to defendant’s negligence. Following a trial on the merits, the trial judge ruled in favor of the defendant and dismissed plaintiff’s demand. Plaintiff appeals that judgment.
On appeal, the plaintiff argues that the trial court erred by failing to find that the defendant breached the standard of care required of health care providers with regard to their care of the plaintiff. In his reasons for judgment, the trial judge stated that the testimony of Dr. Cabiran and Dr. Charles Mary convinced him that neither the hospital nor its employees in this case breached the standard of care as required by law. Furthermore, the testimony established that the responsibility for constant observation of a patient belongs to the patient and his or her family. Unfortunately, the plaintiff’s family was not able to hire a full-time sitter to constantly observe and assist the plaintiff; however, these circumstances do not dictate that the *1097 hospital be required to provide constant observation of a patient.
The evidence established that the plaintiff became disoriented five days before the accident and wandered out of his room and down to the hospital lobby. After that incident, Dr. Cabiran reduced the medication dosages to be administered to plaintiff. After plaintiffs medication was adjusted, there were no more periods of disorientation noticed by the hospital staff which closely monitored the plaintiff. Because this careful monitoring of the plaintiff did not indicate any further signs of confusion or disorientation for several days, the staff reasonably believed that this earlier problem had been resolved by the adjustment of the medication.
On the night of plaintiff’s accident, the nurse on duty checked on the plaintiff regularly and approximately one hour before the accident noted that he was sleeping comfortably and showed no signs of restlessness or discomfort. When plaintiff fell later, the nurse rushed into the room to help and asked the plaintiff why he had not used the call button to let her know that he needed assistance. He replied that he did not use the button because he only needed to use the bathroom. During this period after his fall, the plaintiff was not disoriented or confused and followed the nurse’s commands with no difficulty.
The record in this case indicates that the hospital staff provided more than adequate care to the plaintiff during his hospital stay. The orders of plaintiff’s treating physician were clearly followed by the staff and the plaintiff received careful attention. Although this accident was very unfortunate, the hospital is not under an obligation to provide someone to constantly observe the plaintiff or any other patient in his or her room. Unfortunately, the family could not retain an all-night sitter to ensure that such an accident would be prevented as advised by Dr. Cabiran. However, the evidence clearly shows that the trial judge correctly found that the hospital in this case did not breach the standard of care required by law of health care providers and was free from fault in this case.
Therefore, the trial court judgment is affirmed.
AFFIRMED.